685 S.E.2d 245

**Jason L. GALLOWAY, Petitioner, Appellant,**

**v.**

**Tiffany D. GALLOWAY, Respondent, Appellee.**

**No. 34588.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2009.

Decided Oct. 13, 2009.

Michele Rusen, Esq., Rusen and Auvil, PLLC, Parkersburg, for Appellant.

Catherine B. Adams, Esq., Legal Aid of West Virginia, Parkersburg, for Appellee.

PER CURIAM:

This case is before the Court upon Petitioner Jason Galloway's appeal of a final order of the Circuit Court of Wood County entered on February 14, 2008. The circuit court affirmed a family court ruling which denied Jason Galloway the opportunity to present DNA evidence for the purpose of disestablishing paternity of a child, Ivy Lynn Galloway, born during his marriage to Respondent Tiffany Galloway.

After carefully reviewing the briefs, the legal authority cited and the record presented for consideration, we affirm the circuit court's ruling.

I.

*Facts & Background*

The divorce proceeding between Jason Galloway and Tiffany Galloway has been ongoing for almost a decade. The couple were married on August 24, 1998. Two months later, on October 28, 1998, Tiffany Galloway gave birth to a daughter, Ivy Lynn Galloway (hereinafter "Ivy"). Approximately three months after Ivy was born, Tiffany told Jason that the baby might not be his. Shortly thereafter, Jason, Tiffany and Ivy underwent DNA testing and a report, issued on April 29, 1999, confirmed that Jason was not Ivy's biological father. Jason continued living with Tiffany and Ivy for approximately 14 months after discovering he was not the father.

On July 10, 2000, Tiffany Galloway filed for divorce and the couple separated. Jason Galloway moved in with his mother after the couple separated. Jason's mother continued to treat Ivy as her grandchild after the separation, often times bringing Ivy to her house. On one of these visits in 2003, when Ivy was four years old, Jason Galloway told Ivy to stop calling him "daddy."

The issue of paternity was raised during the initial divorce proceeding and a *guardian ad litem* was appointed to represent Ivy.

This divorce proceeding was delayed, awaiting the results of a paternity action in Ritchie County, West Virginia, in which a man named Michael Stevens underwent paternity testing to determine if he was Ivy's biological father. The paternity test showed that Mr. Stevens was not Ivy's father. On November 16, 2001, a final hearing was held in the Galloway's divorce proceeding. Neither party appeared for this hearing [1] and the initial divorce action was dismissed.

A second divorce action was filed, this time by Jason Galloway, on February 21, 2003. Since paternity was again raised, the Family Court of Wood County appointed Joseph P. Albright, Jr., to serve as *guardian ad litem* to determine whether disestablishment of paternity was in the best interest of the child, as required by Syllabus Point 4 of *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 387 S.E.2d 866 (1989).[2] In *Michael K.T.*, this Court identified eight factors which must be considered when determining whether blood test evidence should be admitted for the purpose of disproving paternity. These eight factors are:

1) the length of time following when the putative father first was placed on notice that he might be the biological father before he acted to contest paternity;

2) the length of time during which the individual desiring to challenge paternity assumed the role of father to the child;

3) the facts surrounding the putative father's discovery of nonpaternity;

4) the nature of the father/child relationship;

5) the age of the child;

6) the harm which may result to the child if paternity were successfully disproved;

7) the extent to which the passage of time reduced the chances of establishing paternity and a child support obligation in favor the child; and

8) all other factors which may affect the equities involved in the potential disruption of the parent/child relationship or the chances of undeniable harm to the child. *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989).

Following his investigation, the *guardian ad litem* orally presented his conclusion to the court that it would not be in the best interest of the child to disestablish paternity because: (1) the couple was married when the child was born; (2) Jason Galloway is listed as the father on the child's birth certificate; and (3) Jason Galloway has steady employment, while another man alleged to be the biological father of the child was in jail. The family court adopted the *guardian ad litem's* findings and refused to allow Jason Galloway the opportunity to present DNA evidence for the purpose of disestablishing paternity.

Following the family court's ruling, Jason Galloway filed a *pro se* appeal to the Circuit Court of Wood County. The circuit court denied his appeal citing the *guardian ad litem's* conclusion that it was not in the best interest of the child to disestablish paternity, and stating "it is clear that the best interest of the child would include receiving financial support from the Petitioner ... The Petitioner continued to support the child as his own for many months following Respondent's confession."

On January 13, 2006, Jason Galloway filed a Petition for Appeal with this Court. On March 6, 2006, the West Virginia Bureau of Child Support Enforcement filed a motion to remand the case to family court so that a further inquiry into the *Michael K.T.* factors could occur. On March 13, 2006, Jason Galloway and Tiffany Galloway filed a joint motion to remand the case. By order dated March 17, 2006, this Court refused the Petition for Appeal and remanded the case to the Family Court of Wood County for the additional proceedings requested by the parties.

---

1. The fact that neither party appeared for this hearing is set forth in a September 26, 2007, family court order. Jason Galloway disputes this and states that he attended the hearing.

2. Syllabus Point 4 of *Michael K.T. v. Tina L.T.*, *supra*, states:

A guardian *ad litem* should be appointed to represent the interests of the minor child whenever an action is initiated to disprove a child's paternity.

The family court below subsequently conducted hearings in this matter on May 16, 2006, and January 30, 2007. At the January 30, 2007, hearing, the *guardian ad litem* failed to produce a written report, but orally told the court that his opinion had not changed and he again recommended that Jason Galloway should not be allowed to present DNA evidence for the purpose of disestablishing paternity. The *guardian ad litem* stated that many of the *Michael K.T.* factors are neutral in this case and did not weigh in favor of either party. The *guardian ad litem* told the court that his conclusion was based on what was in the best interest of this child. Counsel for Jason Galloway argued that her client was not receiving a meaningful hearing because the *guardian ad litem* failed to produce a written report addressing the *Michael K.T.* factors. While the *guardian ad litem* did not produce a written report prior to this hearing, he orally presented his findings to the court and offered to answer any questions from counsel regarding his investigation and his conclusion that disestablishing paternity was not in the best interest of this child.

The family court again relied on the *guardian ad litem's* recommendation and entered a final order on October 16, 2007, in which it ruled that disestablishing paternity was not in the child's best interest. Jason Galloway appealed this ruling to the circuit court. The circuit court affirmed the family court ruling in a February 14, 2008, final order, in which it discusses the eight *Michael K.T.* factors and concludes that it is not in the best interest of this child to allow Jason Galloway to present evidence for the purpose of disestablishing paternity. Jason Galloway now appeals that order.

## II.

### Standard of Review

■ In this case, we are asked to review an order of the Circuit Court of Wood Coun-

ty that affirmed an order rendered by the Family Court of Wood County. With respect to our review of such an order by a circuit court, we have held that:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus Point 1, *Carr v. Hancock*, 216, W.Va. 474, 216 W.Va. 474, 607 S.E.2d 803 (2004).

## III.

### Analysis

■ The issue of whether paternity test results disproving paternity should be admitted into evidence first came before this Court in the *Michael K.T.* case. In Syllabus Point 3 of *Michael K.T.*, this Court held:

> A trial judge should refuse to admit blood test evidence which would disprove paternity when the individual attempting to disestablish paternity has held himself out to be the father of the child for a sufficient period of time such that disproof of paternity would result in undeniable harm to the child.

■ As this Court has frequently emphasized, the best interest of the child is the polar star by which all matters affecting children must be guided. *See* Syllabus Point 7, *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."). With this principal in mind, this Court has recognized that "the law favors the innocent child over the putative father in certain circumstances."[3] *Michael K.T.*, 182 W.Va. at 405, 387 S.E.2d at 872. Although we did not

---

**3.** The Court relied on the reasoning of a Pennsylvania case, *Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976), in concluding that the law favors the innocent child over the putative father in certain circumstances. Specifically, the Court relied on the following from the *Andreas* case:

Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship,

establish a finite period of time which must pass before blood test evidence is inadmissible, we did state that "absent evidence of fraudulent conduct which prevented the putative father from questioning paternity, this Court will not sanction the disputation of paternity through blood test evidence if there has been more than a relatively brief period of time." *Id.* In *William L. v. Cindy E.L.*, 201 W.Va. 198, 495 S.E.2d 836 (1997), for example, this Court found that a husband in a divorce proceeding could not use blood test evidence to disestablish paternity of child with whom he had a normal father/child relationship for four years.

■ Turning to the case *sub judice*, we initially note that Jason Galloway has presented this issue four times in the courts below, twice in family court and twice on appeal to the Circuit Court of Wood County. On all four of these occasions, the courts below have concluded that Jason Galloway held himself out as Ivy's father for a sufficient period of time such that allowing him to offer evidence for the purpose of disproving paternity would result in harm to the child. Jason Galloway's main argument before this Court is that the *guardian ad litem* failed to perform a proper investigation into the *Michael K.T.* factors, and the circuit court below made factual findings that were clearly erroneous and not supported by the record. We disagree.

The undisputed facts the circuit court relied on were that Jason Galloway remained married to Tiffany Galloway and living with Ivy for 14 months after discovering he was not the child's father. While the issue of paternity was raised during the initial divorce proceeding, that proceeding was dismissed on November 16, 2001. The paternity issued remained dormant from that date until February 21, 2003, when Jason Gallo-

way filed a second divorce action. During this gap between the dismissal of the first case and the filing of the second case, Ivy continued to have a grandmother/grandchild relationship with Jason Galloway's mother. Ivy continued to consider Jason Galloway to be her father until at least 2003.[4]

■ While it is understandable that counsel for Jason Galloway would be frustrated by the *guardian ad litem's* failure to produce a written report, the lack of a written report is not a sufficient ground to remand this case to the family court below for further proceedings. The *guardian ad litem* investigated the case, spoke with both Jason and Tiffany Galloway, and discussed the *Michael K.T.* factors at the January 30, 2007, family court hearing. The *guardian ad litem* offered to answer any questions counsel had about his investigation at this hearing.[5] The family court considered the oral recommendation of the *guardian ad litem*, as well as the testimony of Jason Galloway when it concluded that he should not be allowed to present evidence for the purpose of disestablishing paternity.

In its February 14, 2008, final order, the circuit court weighed the evidence presented by both parties, and conducted a review of all eight *Michael K.T.* factors. The circuit court put strong emphasis on the first factor, the length of time following when the putative father first was placed on notice that he might be the biological father before he acted to contest paternity, and found that it weighed against Jason Galloway "because a relatively lengthy period of time had passed" between the time he was put on notice that he was not Ivy's father and the time he acted to contest paternity. The fourth *Michael K.T.* factor, the nature of the father/child relationship, was also given great weight by the circuit court, who found "there was evi-

---

a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures the identity and whereabouts of the natural father, so that the child will be denied the love, affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can prohibit

him from employing the sanctions of the law to avoid the obligations which their assumed relationship would other wise impose.
*Andreas*, 245 Pa.Super. at 313, 369 A.2d at 419.

4. In 2003, when Ivy was four years old, Jason Galloway told her to stop calling him "daddy."

5. We note that Trial Court Rule 21.03 allows a guardian ad litem to "make recommendations to the court by testimony or in writing, unless otherwise directed by the court."

dence that the Petitioner continued to hold himself out as the father of the child and the child had always considered him her father until at least the age of four. Additionally, the child has had an ongoing relationship with the Petitioner's mother throughout most of the pendency of this matter." The circuit court considered the last three factors together and determined that Ivy could suffer "great harm if she has no legal father and is not provided any support, financial or otherwise, from such legal father."[6] The circuit court applied the eight *Michael K.T.* factors to the evidence in the record and Jason Galloway has failed to demonstrate that these findings are clearly erroneous.

Finally, we note that Ivy is now ten years old and that remanding this case for a further investigation by the *guardian ad litem,* as urged by Jason Galloway, would again delay paternity from being settled. As this Court has previously stated, "it is in the child's best interest for paternity to be settled sooner rather than later." *State ex rel. Dep't of Health and Human Resources v. Michael George K.,* 207 W.Va. 290, 299, 531 S.E.2d 669, 678 (2000).

### IV.

#### *Conclusion*

For the reasons set forth in this opinion, the judgment of the Circuit Court of Wood County, rendered on the 14th day of February 2008, is affirmed.

Affirmed.

Chief Justice BENJAMIN concurs and reserves the right to file a separate opinion.

---

**6.** The circuit court's final order discusses a number of ways in which Ivy could be harmed by allowing Jason Galloway to disestablish paternity:

> First, the child would be left without a legal father even after having spent almost half of her life believing that the Petitioner was her father. Second, the child would be left without any type of support. This support would, as the Petitioner has clearly pointed out to the Court, undoubtedly include financial support. The child would be significantly harmed by the fact that she would never have any reliable or meaningful financial support from any legal father, natural or otherwise, if the paternity were disproved ... Also, it is important to note that there was a significant passage of time, at least four years, during which the chances of establishing paternity and a support obligation in a natural father in favor of the child have been diminished and reduced. Further, at this point in time the child is eight years old and the chances of establishing paternity are becoming increasingly reduced.