# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**March 25, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KENNETH N.,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-304**          (Fam. Ct. Fayette Cnty. No. FC-10-2011-D-98)

**JEAN L.,**
**Petitioner Below, Respondent**


## MEMORANDUM DECISION

Petitioner Kenneth N.[1] ("Father") appeals the Family Court of Fayette County's June 9, 2023, order denying his petition for a custody modification and holding him in contempt. Respondent Jean L. ("Mother") filed a response in support of the family court's decision.[2] Father did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother are divorced and share two minor children, S.N. and K.N. ("children"). Events leading to this appeal began when Mother filed two domestic violence petitions against Father in April and June of 2022 for his alleged harassment of her.[3] The parties' final divorce order was entered on July 17, 2022, and included the following directives: (1) there shall be no unwanted contact between the parties; (2) the parties shall only communicate by text and shall only communicate about the children; (3) neither party shall allow third parties to speak negatively about the other party in the children's presence;

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.,* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Both parties are self-represented.

[3] Mother agreed to withdraw the domestic violence protective orders in return for Father's agreement to stop harassing her.

and (4) neither party shall discuss finances or legal matters in front of the children. Father was also granted parenting time every other weekend and Tuesday through Thursday on alternating weeks during the school year but exercised a week-on/week-off parenting schedule during summer break.

During a subsequent hearing on November 17, 2022, the parties entered into an agreement to modify their parenting plan to include provisions prohibiting both parties from "making any negative comments about the other or the other's family" and doing "anything to directly or indirectly harass or bother the other party."

On December 27, 2022, Mother filed a petition for contempt against Father. In her petition, she alleged that Father: (1) harassed her and her family through text messages and phone calls; (2) threatened to take the children from her and accused her of being an unfit parent; (3) spoke negatively about her to the children; (4) made false reports of abuse to Child Protective Services ("CPS"); (5) requested that law enforcement conduct wellness checks at her residence; (6) stalked her at her new job; (7) had the children contact him through FaceTime so he could get pictures of her home; (8) pressured the children about the parties' family court matters; and (9) refused to allow the oldest child to play sports or participate in extra-curricular activities.

On April 3, 2023, Father filed a petition for contempt and a petition for modification against Mother. In his petition for contempt, Father alleged that: (1) Mother interfered with his daily FaceTime calls; (2) the children did not have their own rooms; (3) Mother feeds the children too late in the evenings; (4) Mother does not keep him informed of medical matters; and (5) Mother allowed the children to miss school excessively. Based on those allegations, Father requested a 50-50 custodial modification and that he be given primary decision-making on all medical and educational matters.

A hearing on all three petitions was held on June 8, 2023. At the hearing, Mother presented an audio recording of Father telling her to "enjoy being a weekend mom" during a child visitation exchange. Mother also presented multiple texts from Father. The family court found that Father sent texts constantly, but all texts were related to the children and did not violate the previous order. Father testified that he telephoned Mother, which was in violation of the prior order, and that he requested law enforcement to conduct well checks on the children. During his testimony, Father also admitted that he parked at Mother's workplace and took pictures during FaceTime calls, but he denied that any of those actions were for an improper purpose. Father also testified that he refused to allow the oldest child to play sports because it would interfere with his parenting time. Father presented hundreds of text messages between himself and Mother to prove his contempt

against Mother, and after reading a few of them aloud, the family court found that Mother's replies to the text messages were all denials of wrongdoing.

Additionally, at the hearing on June 8, 2023, the family court conducted an in-camera interview of the oldest child, S.N., who expressed a desire to speak with the judge. The child stated that: (1) she loved both parents and did not want to lose time with either; (2) her parents always argued; (3) both parents talked badly about the other parent; (4) both parents have talked to her about speaking to the court, but only Father has pressured her about what to say; (5) Father took pictures of the outside of Mother's home during FaceTime calls; and (6) she wanted to play soccer and softball.

The family court entered its *Order Following Contempt and Modification Hearing* on June 9, 2023. In that order, the family court held Father in contempt for harassing Mother, calling instead of texting her, and for discussing legal matters with the children. Additionally, the family court found Mother to be in contempt for speaking negatively about Father in the children's presence. Ultimately, the family court found that Mother's testimony was more credible than Father's and that there was "insufficient evidence to support the [F]ather's proposed modification of the parenting plan." The family court further ordered the parties not to discuss the child's in-camera interview and held that S.N. shall be permitted to play soccer and softball. It is from that order that Father now appeals.

For these matters, we use the following standard of review.

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

On appeal, Father raises three assignments of error. First, he asserts that the family court erred when it held him in contempt for harassing Mother even though there was no evidence to support Mother's claims. In support of his argument, Father states that after Mother presented her case, he presented nearly 300 pages of text messages, but the family court advised that it was too much to enter into evidence. As a result, Father did not have enough time to present his case. Upon review, we find that Father's argument lacks merit. West Virginia Code § 51-2A-7(a)(1) (2013) gives family courts the power to "[m]anage the business before them." Here, the family court requested Father to point out any specific

text messages that he felt supported his allegations. Father read several text messages into the record. The family court determined that the messages read aloud by Father "did not show the mother was in contempt or an unfit parent." Therefore, we conclude that the family court did not commit error or abuse its discretion as to this assignment of error.

As his second assignment of error, Father contends that the family court erred when it ordered him not to discuss court proceedings with the children because it prevented him from answering the oldest child's questions. Mother, in response, argues that the children do not want to be involved in the parties' disagreements and that it is in their best interest not to discuss adult matters. Additionally, S.N. stated during her in-camera interview that Father pressured her about what to say during family court proceedings. Upon review, we find Father's argument unpersuasive. The Supreme Court of Appeals of West Virginia has consistently held that the best interest of the child is the polar star by which all matters affecting children must be guided. *See Galloway v. Galloway*, 224 W. Va. 272, 275, 685 S.E.2d 245, 248 (2009) (citations omitted). As such, we conclude that the family court did not abuse its discretion in ordering the parties not to discuss the proceedings with the children.

Lastly, Father argues that the family court erred when it ruled that the oldest child could play sports against his wishes. We disagree. S.N. informed the family court that she wished to play sports and Mother argued that it was in the child's best interest to participate in sports. "An appellate court may not . . . weigh evidence, as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.10 461 S.E.2d 163, 175 n.10 (1995). Additionally, "[a] reviewing court may not overturn a family court's finding simply because it would have decided the case differently." *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 231, 470 S.E.2d 177, 185 (1996).

Accordingly, we affirm the family court's June 9, 2023, order.[4]

---

[4] Although we find no prejudicial error in the family court's order, we would be remiss if we failed to mention our concern with the lack of analysis in the final order. While it does not change the outcome here, we encourage family courts to strive to include detailed analysis regarding whether a substantial change in circumstances has occurred, and if so, to include specific findings of fact and conclusions of law which are required when there is a deviation from a 50-50 custodial allocation. Here, the family court's final order merely stated, "[t]here was insufficient evidence to support the father's proposed modification of the parenting plan."

West Virginia Code § 48-9-206(d) (2022) instructs that final parenting plan orders must include specific findings of fact if the family court first finds that a substantial change in circumstances has occurred pursuant to § 48-9-401(a) (2022). West Virginia Code § 48-9-209 (2022) provides a non-exclusive list of factors to be considered when making findings regarding custody.

Affirmed.

**ISSUED:** March 25, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear